CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUBIN YOUNG, President
of Black Organizing Leadership
Development,

              Plaintiff,

vs.                                        CIVIL NO. 00-7 JC/LFG

PETE DOMENICI,

              Defendant.

## MEMORANDUM AND ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS AND DISMISSING CASE WITH PREJUDICE

THIS MATTER is before the Court on Plaintiff Rubin Young's ("Young") Motion for Leave to Proceed In Forma Pauperis [Doc. 2], and, further, upon the Court's *sua sponte* review of Young's pleading.

In enacting the federal in forma pauperis statute, 28 U.S.C. § 1915, Congress "intended to guarantee that no citizen shall be denied an opportunity to commence, prosecute or defend an action, civil or criminal, in any court of the United States, Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1732-33 (1992)(internal quotation marks omitted), solely because . . . poverty makes it impossible to pay or secure the costs of litigation."

Here, Young submits a declaration under penalty of perjury attesting that he is unemployed, has had no income for the last year, has no cash or savings, owns no property, stocks, bonds, automobiles or other property, and that his wife and step-daughter are dependent upon him for support. Based on these declarations, the Court will authorize Young's Complaint to be filed.



While Congress removed barriers to court process by indigents by enacting the in forma pauperis statute, Congress also recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." Neitzke v. Williams, 490 U.S. 319, 324, 109 S. Ct. 1827, 1831 (1989); Denton v. Hernandez, supra. In response to this congressional concern, courts have been specifically authorized to dismiss an in forma pauperis complaint "if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915. Accordingly, the Court may consider a *sua sponte* review of a complaint pursuant to this section and may dismiss the complaint if it is "based on an indisputably meritless legal theory." Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991). If, however, the defect is in the pleadings and the pleadings may be cured by an appropriate amendment, leave will be granted to cure the pleading defect.

The gravamen of the complaint is that Senator Pete Domenici as "a member of the United States Congress or Senate" either supported or opposed legislation with which Young disagrees. It is clear that the determination of legislative policy, its formulation and promulgation are all matters within the legislative sphere, and absolute legislative immunity extends to legislators when they are acting within the sphere of legitimate legislative activity. Eastland v. United States Serviceman's Fund, 741 U.S. 491, 503 (1975). "In so shielding the legislative branch from judicial scrutiny, the clause [speech and debate] seeks to protect legislators 'not only from the consequences of litigation's results, but also from the burden of defending themselves.'" Browning v. Clerk, United States House of Representatives, 789 F.2d 923, 927 (D.C. Cir.)(quoting Dombrowski v. Eastland, 387 U.S. 82, 85 (1967). The concept of absolute legislative immunity is embodied in American law and, indeed, is part of our American Constitution, U.S. Const., Art. I, § 6..

2

In 1951, Justice Felix Frankfurter, writing for the Supreme Court, traced the development of this privilege from its early parliamentary struggles in the 16th Century to its rightful place of honor in the American Constitution:

> Freedom of speech and action in the legislature was taken as a matter of course by those who severed the Colonies from the Crown and founded our Nation. It was deemed so essential for representatives of the people that it was written into the Articles of Confederation and later into the Constitution. Article V of the Articles of Confederation is quite close to the English Bill of Rights: "Freedom of speech and debate in Congress shall not be impeached or questioned in any court or place out of Congress . . . ." Article I, § 6 of the Constitution provides: ". . . for any Speech or Debate in either House (the Senators and Representatives) shall not be questioned in any other place."
>
> The reason for the privilege is clear. It was well summarized by James Wilson, an influential member of the Committee of Detail which was responsible for the provision in the Federal Constitution. "In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense." II Works of James Wilson (Andrews ed. 1896) 38. See the statement of the reason for the privilege in the Report from the Select Committee on the Official Secrets Act (House of Commons, 1939) xiv.

Tenney v. Brandhove, 341 U.S. 367, 372-73, 71 S. Ct. 783, 786 (1951).

Absolute legislative immunity for acts within a legislative sphere is not only the law of this circuit, Peterson v. Hatch, 92 F.3d 1197 (10th Cir. 1996); Fry v. Bd. of County Comm'rs, 7 F.3d 936 (10th Cir. 1993), it is the law of the land. Tenney v. Brandhove; United States v. Johnson, 383 U.S. 169, 86 S. Ct. 749 (1996); United States v. Brewster, 408 U.S. 501, 92 S. Ct. 2531 (1972).

3

Young's claims are barred as a matter of law, and will be dismissed. Young is unable to state a cause of action against a United States senator for actions taken within the sphere of legislative activity, and "[e]xamples of claims based on inarguable legal theories include those against which the defendants are undeniably immune from suit." Hall, at 1109. Accordingly, Young's claims are hereby dismissed with prejudice.

*signature*

John E. Conway
Chief United States District Judge